[Cite as *State v. Moore*, 2014-Ohio-5183.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2014-G-3195** |
| JOHNATHAN M. MOORE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Geauga County Court of Common Pleas, Case No. 13 C 000111.

Judgment: Affirmed.

*James R. Flaiz,* Geauga County Prosecutor, and *Christopher J. Joyce,* Assistant Prosecutor, Courthouse Annex, 231 Main Street, Suite 3A, Chardon, OH 44024 (For Plaintiff-Appellee).

*Matthew W. Weeks*, Carl P. Kasunic Co., L.P.A., 4230 State Route 306, Building I, Suite 300, Willoughby, OH 44094 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Johnathan M. Moore, appeals from the judgment of the Geauga County Court of Common Pleas, sentencing him to an aggregate term of 13 years imprisonment. We affirm.

{¶2} Appellant and his cousin, Joshua Moore, planned the robbery of the Newbury Pharmacy, owned and staffed by the Martin family. On July 11, 2013, appellant provided Rashad Muhammad with a ".38 Special" and dropped Muhammad

and a co-defendant, Zachary Tiggs, off at the pharmacy. While Tiggs diverted the attention of the clerk at the front of the store, Muhammad robbed the pharmacist of controlled narcotics at gunpoint. The individuals hastened to the exit of the store and appellant drove them away from the scene. An M-4 rifle was in the vehicle with appellant while the robbery occurred. Appellant was later arrested.

{¶3} On August 23, 2013, appellant was indicted on one count of complicity to commit aggravated robbery, a felony of the first degree, in violation of R.C. 2911.01(A)(1), with a firearm specification and a forfeiture specification; one count of complicity to commit kidnapping, a felony of the first degree, in violation of R.C. 2905.01(A)(2), with a firearm specification and a forfeiture specification; two counts of obstructing justice, felonies of the third degree, in violation of R.C. 2921.32(A)(2) and (C)(4); one count of tampering with evidence, in violation of R.C. 2921.12(A)(1), a felony of the third degree; one count of complicity to commit theft of drugs, in violation of R.C. 2913.02(A)(1) and (B)(6), with a firearm specification and a forfeiture specification; and one count of improperly furnishing firearms to a minor, in violation of R.C. 2923.21(A)(3), a felony of the fifth degree.

{¶4} On December 9, 2013, appellant entered a plea of guilty to complicity to commit aggravated robbery, a felony of the first degree, with a firearm specification; tampering with evidence, a felony of the third degree; and improperly furnishing firearms to a minor, a felony of the fifth degree. After a sentencing hearing, appellant was sentenced to an aggregate term of 13 years imprisonment. He now appeals his sentence.

{¶5} In reviewing felony sentences, this court has utilized two seemingly distinct standards. On one hand, this court has stated it reviews felony sentences

2

pursuant to the two-step approach set forth in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, ¶26. Under the first prong, appellate courts "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law." *Id.* "If this first prong is satisfied, the trial court's decision in imposing the term of imprisonment is reviewed under the abuse-of-discretion standard." *Id.*

{¶6} This court has also observed, however, that "[b]ecause a trial court is statutorily mandated to make findings under R.C. 2929.14(C)(4) before it can impose consecutive sentences, the findings are not within the court's discretion. In this respect, post H.B. 86, it follows that the standard set forth under R.C. 2953.08 is a more appropriate standard for an appellate court's review of consecutive sentences." *State v. Cornelison*, 11th Dist. Lake 2013-L-064, 2014-Ohio-2884, ¶35.

{¶7} Our use of the foregoing, ostensibly different, standards of review may initially appear inconsistent. In practice, however, there is no real distinction between the two standards. The point of retaining *Kalish* for reviewing general felony sentences is merely to underscore the trial court has discretion to enter sentence within a respective felony range. Accordingly, the analysis employed under either standard will inevitably be the same.

{¶8} Appellant's first assignment of error provides:

{¶9} "The trial court erred when it imposed consecutive sentences on John without making the necessary findings required by O.R.C. 2929.14(C)(4)."

{¶10} Consecutive sentences can be imposed, pursuant to R.C. 2929.14(C)(4), if the court finds (1) a consecutive sentence is necessary to protect the public from future crime or to punish the offender *and* (2) consecutive sentences are not

3

disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. In addition to these two factors, the court must find one of the following three factors:

{¶11} (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing * * * or was under post-release control for a prior offense[;]

{¶12} (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses * * * adequately reflects the seriousness of the offender's conduct[; or]

{¶13} (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶14} Appellant acknowledges that the trial court found consecutive sentences were necessary to punish him. Appellant further recognizes the trial court found the sentences were not disproportionate to the seriousness of his conduct. Appellant maintains, however, the trial court failed to identify how, pursuant to R.C. 2929.14(C)(4)(b), "[a]t least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses * * * adequately reflects the seriousness of the offender's conduct." And, appellant contends, the record does not support this finding because Muhammad's use of the weapon he provided was an element of the crime of complicity to aggravated

4

robbery. Because of this, he argues, there was no distinct harm resulting from each discrete crime. Thus, appellant maintains, the trial court's imposition of consecutive sentences is clearly and convincingly contrary to law. We do not agree.

{¶15} The language of the statute simply requires a court to find the harm that is caused by two or more offenses was so great or unusual that no single prison term would reflect the seriousness of the conduct. Nothing in the language of the statute suggests each of the multiple offenses must cause some harm independent from the other(s); rather, the facts of a case must simply support a finding of great and unusual harm from the multiple offenses that were a part of at least one course of conduct.

{¶16} In this case, the record demonstrates that appellant planned the robbery and provided the principal robber, a juvenile, with the firearm to effectuate the crime. Further, at sentencing, the court heard statements from the victims emphasizing how they have been terrorized by the memory of the robbery. Not only did they lose the prescription narcotics that were stolen from the store, they also lost a sense of security that they have been unable to reclaim since the incident. When the record is viewed as a whole, we conclude there was an adequate basis for the court to conclude that, through a course of conduct, including the planning of the entire criminal enterprise, the harm caused by the offenses of furnishing a firearm to a minor and complicity to aggravated robbery, was so great or unusual that no single prison term would adequately reflect the seriousness of appellant's conduct. We therefore hold the trial court's imposition of consecutive sentences was not clearly and convincingly contrary to law.

{¶17} One final issue must be addressed. The trial court, in imposing consecutive sentences, made appropriate statutory findings pursuant to R.C.

5

2929.14(C)(4) at the sentencing hearing. It failed, however, to incorporate those findings into the judgment on sentence. In *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, the Ohio Supreme Court recently stated, because a court speaks through its judgment entry, it "should also incorporate its statutory findings into the sentencing entry." *Id.* at ¶29. The Court emphasized that a "word-for-word recitation of the language of the statute is not required" so long as the appellate court can discern that the trial court engaged in the correct analysis and determined that the record supports the findings. *Id.*

{¶18} The Court further observed that a sentencing court's "inadvertent failure to incorporate the statutory findings in the sentencing entry after properly making those findings at the sentencing hearing *does not* render the sentence contrary to law[.]" *Id.* at ¶30. Instead, the court ruled that such an error is merely a clerical mistake that can be corrected via a nunc pro tunc entry to reflect the findings that were made in open court. *Id.* Such an omission does not require a new sentencing hearing. *Id.*

{¶19} In this matter, the trial court made the necessary findings at the sentencing hearing that were supported by the record. These necessary statutory findings, however, were omitted from its judgment entry. The omission in this matter was merely clerical and, as a result, was capable of correction through a nunc pro tunc entry. Pursuant to a temporary remand order entered by this court, the trial court corrected the omission by way of a nunc pro tunc judgment entry filed September 29, 2014.

{¶20} Appellant's first assignment of error lacks merit.

{¶21} Appellant's second assignment of error provides:

6

{¶22} "The trial court committed prejudicial error and abused its discretion when it sentenced John to a total of thirteen (13) years for the convictions. In doing so the trial court abused its discretion when applying the overriding purposes of felony sentencing set forth in O.R.C. 2929.11 and the seriousness and recidivisim factors set forth in O.R.C. 2929.12."

{¶23} Appellant contends the trial court abused its discretion in imposing sentence because it failed to fully consider the factors under R.C. 2929.11 and R.C. 2929.12. We do not agree.

{¶24} At the sentencing hearing, the trial court made the following statements prior to ordering appellant to serve an aggregate prison term of 13 years:

{¶25} This was a, you planned, you played a big role in planning this robbery. In fact, the record reveals you used your Iphone to go into the pharmacy a week ahead of time and to film [it]. You cased it, in other words, and you used that same Iphone during the get-a-way to communicate with Joshua so he would know where you were, and vice versa, and to help facilitate the offense.

{¶26} You not only provided the get-a-way car, the one that you borrowed from your acquaintance or whomever, you drove it. You drove it. And you were the chauffer, so-to-speak, tongue in cheek, of Tiggs and Muhammad.

{¶27} And this effort of yours to avoid Muhammad's shooting somebody else, well, yeah. I could understand Mr. Petersen wanting to bring that out. That's what a good lawyer does, is bring out the positive.

7

{¶28} But go back to the root cause. The reason Muhammad was there because of you because you recruited Tiggs who in turn brought Muhammad with him, and you went along with it.

{¶29} You started this chain of events. You were a primary mover, and you then handed the gun, a loaded 38 Smith and Wesson handgun, you handed it to Muhammad who looked like, well, he is a juvenile. He looks like a juvenile. You gave it to that guy, a guy from Detroit who you barely knew, other than he said here he was a gang member. Maybe you didn't know that.

{¶30} But he was a 17 year old. Who knows what juveniles do. You give him a gun that's loaded and tell him, go rob a store. Who knows what that guy is going to do.

{¶31} So this is a huge factor. You are the last person that had an opportunity to say I am not going to give this gun to this kid. Kids do all kinds of nutty things when they are trying to prove their bravado. Adults, too. But a kid, a 17 year old who is trying to move. He is a tough guy. That's like mixing dangerous chemicals together.

{¶32} And it is true, I am not holding you responsible for bringing Muhammad. It is true you recruited Tiggs, who brought Muhammad. But it was you who turned over the gun to Muhammad.

8

{¶33} I mean, and you, you brought Tiggs, a mercenary, brought him down here from Detroit, brought him into our community and you put him up to this, you and Joshua, the two of you.

{¶34} And for what? For illegal drugs. For drugs. And your counsel wisely has conceded the harm to these victims in 911 to date is a long time, and I am sure it is going to be at least that long for the victims, too, in resolving, if there is resolution of the psychological effect of what went on that day and the what ifs, and that haunts the victims of this crime.

{¶35} This was organized. This was scripted. This was a long time in the making. This wasn't an impulsive, hey, let's grab this gun and go in there and stick them up and see if we could bet a bag of drugs and a handful of money and get out of here.

{¶36} You had a multitude of opportunities to get out of this scenario. But you stuck with the plan. I will give you that. You were sober enough and you were clear headed enough to stick with this whole plan and execute it.

{¶37} So I don't have a whole lot of confidence in the argument that tries to paint you as the lesser of two evils. You and Joshua did this together. He was the computer guy, and you were the implemented guy and got Tiggs and handed him this gun and drove the getaway car and related.

{¶38} So you are joined at the hip with him, and I have considered that you are a drug addict. Okay. I have considered that, and I have

9

considered that you have had a horrible childhood, dysfunctional, no doubt about it. I have considered that, and to a degree, that has some mitigating factors. However it is not a defense, and it hasn't been argued as a defense here. And it doesn't give you a free pass.

{¶39} And I note this too. There are others who had just as rough a life as you that were just as addicted as you were and didn't do this, even though they were just as desperate for drugs as you may have been. But they had in them not to do this. I am not going to do this. Instead, they walked away from it, or did something else.

{¶40} You have had prior brushes with the law. You don't have an extensive record, and you have done some time in jail. You have had some opportunities to rehab. You had three years of sobriety. You had that chance to say, I am stopping now. I have been sober for three years. It is discouraging that drugs once again lead people to do these dastardly deeds or play a hand in it.

{¶41} So while I recognize some mitigating factors here, I think perhaps a greater force is that I do think you have shown some remorse. I am always really skeptical about remorse that is expressed on the eve of sentencing. But you throughout did seem to have remorse, I felt some genuine remorse. Maybe it was a product of having sobered up. But I don't know. That doesn't wipe the slate clean, by any means.

{¶42} Both R.C. 2929.11 and R.C. 2929.12 provide general guidance for a sentencing court imposing every felony sentence. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, ¶36. A court is not mandated to engage in factual findings under the statutes, but must simply "consider" the statutory factors. *Id.* at ¶42. To the extent the record evinces the requisite consideration of the applicable seriousness and recidivism factors, the court has met its obligation. *State v. Arnett*, 88 Ohio St.3d 208, 215 (2000).

{¶43} The court's statements on record demonstrate it gave due consideration to all relevant factors in imposing sentence. It emphasized appellant's role as a principal organizer in this robbery, his act of providing Muhammad with a firearm, and providing transportation to the pharmacy and a getaway vehicle after the robbery. The trial court stressed that it had fully considered the relevant mitigating factors in this case, but also noted these factors did not outweigh the seriousness of crimes or the significance of appellant's role. We therefore conclude the trial court gave adequate consideration to the statutory factors under R.C. 2929.11 and R.C. 2929.12. Thus, we hold the trial court neither abused its discretion in imposing the 13-year aggregate term, nor is the sentence clearly and convincingly contrary to law.

{¶44} Appellant's second assignment of error is without merit.

{¶45} Appellant's third assignment of error provides:

{¶46} "The trial court erred and abused its discretion in sentencing John to nine (9) years for complicity to commit aggravated robbery as this sentence is inconsistent with sentences imposed for similar crimes by similar offenders. See O.R.C. 2929.11(B)."

{¶47} Appellant asserts the trial court committed prejudicial error in sentencing him to a term of nine years for complicity to aggravated robbery because the sentence

is not consistent with sentences imposed for similar crimes committed by similar offenders. Appellant lists various cases in which defendants, convicted of similar crimes, were sentenced to lesser terms of imprisonment. He consequently asserts the trial court abused its discretion in imposing the nine-year term. We do not agree.

{¶48} Preliminarily, in disposing of appellant's second assignment of error, we held the trial court sufficiently considered the factors set forth under both R.C. 2929.11 and R.C. 2929.12. As a result, our disposition of appellant's second assignment of error functioned to render his argument under this assignment of error effectively moot. We shall nevertheless address a misconception inherent in appellant's argument.

{¶49} This court has held that consistency in sentencing is not a matter of comparing similar offenders or similar cases. *State v. DeMarco*, 11th Dist. Lake No. 2007-L-130, 2008-Ohio-3511, ¶25. In holding that cases cannot be formulaically compared in the abstract, we are ultimately acknowledging the circumstances and realities attaching to one case will always differ from another. *State v. Vanderhoof*, 11th Dist. Lake No. 2013-L-036, 2013-Ohio-5366, ¶24, citing *State v. Burrell*, 11th Dist. Portage No. 2009-P-0033, 2010-Ohio-6059. And, by designating a range from which a judge can choose an appropriate sentence, Ohio law recognizes that more severe punishments may be necessary to accomplish the purposes of felony sentencing, even if two defendants commit the same type of crime. *Id.* "Consistency in sentencing is accordingly measured by a trial court's proper application and consideration of Ohio's sentencing guidelines." *Vanderhoof*, *supra* citing *State v. Price*, 11th Dist. Geauga No. 2007-G-2785, 2008-Ohio-1134, ¶33. Thus, for an appellant to demonstrate inconsistency in sentencing, he or she must show the trial court failed to properly consider the relevant statutory factors and guidelines. *Id.*

12

{¶50} As discussed under appellant's second assignment of error, the trial court gave careful and appropriate consideration to the relevant statutory guidelines when it imposed its sentence. We therefore hold the trial court's sentence was consistent pursuant to R.C. 2929.11(B).

{¶51} Appellant's third assignment of error lacks merit.

{¶52} Appellant's final assignment of error provides:

{¶53} "The trial court abused its discretion when it denied John's oral motion for a continuance in order to investigate the issues of potential bias."

{¶54} The Ohio Supreme Court has held "[t]he grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). An abuse of discretion connotes the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black's Law Dictionary* 11 (8th Ed.2004). In considering whether a trial court abused its discretion when ruling on a motion for continuance, a reviewing court must weigh any potential prejudice to the defendant against the trial court's "right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *Unger*, *supra*, at 67.

{¶55} In this matter, appellant moved for a continuance during the sentencing hearing to investigate potential conflicts relating to (1) the pharmacy's distribution of medication to the county jail and (2) the victims' alleged acquaintanceship with the trial court. With respect to the first issue, the trial court found that any commercial relationship between the jail or the sheriff's office and the pharmacy is irrelevant to any

issue relating to the court's imposition of sentence. Regarding the second issue, the trial court, as well as the victims, stated they did not know one another and had never even seen each other prior to the initiation of the underlying prosecution of each co-defendant. The court further stated there had been a considerable amount of time between appellant entering his guilty plea and sentencing. The court therefore determined that the motion for continuance should be denied.

{¶56} Under the circumstances, the trial court weighed any potential prejudice to appellant against its interest in controlling its docket and the public's interest in the prompt and efficient administration of justice. In doing so, we conclude it did not abuse its discretion in denying appellant's motion.

{¶57} Appellant's fourth assignment of error is without merit.

{¶58} For the reasons discussed in this opinion, the judgment of the Geauga County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, P.J.,

DIANE V. GRENDELL, J.,

concur.

14